**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| BX LED LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:22-cv-00444 |
| ) | |
| THE HOME DEPOT U.S.A. INC., ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff BX LED LLC ("BX" or "Plaintiff"), by and through the undersigned counsel, hereby asserts the following claims for patent infringement against Defendant The Home Depot U.S.A. Inc. ("HD" or "Defendant"), and alleges as follows:

### SUMMARY

1.      Plaintiff is the owner by assignment of all right, title and interest in United States Patent Nos. 6,869,812, 7,901,109, 7,973,465, 8,203,260, 8,567,988, 8,998,433, 9,913,333, and 10,966,300 (collectively, the "Patents-in-Suit").

2.      Defendant infringes the Patents-in-Suit at least by selling, without authorization, Plaintiff's proprietary technologies in a number of its commercial products including, *inter alia*, EcoSmart and Commercial Electric (hereinafter, "CE") products, *e.g.*, EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, EcoSmart LED Light Strip, EcoSmart Filament LED, EcoSmart Par38 Dimmable Flood LED Bulb with Selectable Color Temperature, EcoSmart A19 75W Bulb, EcoSmart White Glass Filament, CE 4ft Wraparound LED Light, CE LED Spike, CE Recessed Lighting, CE Landscape Light, CE LED Floodlight with Wall Mount, CE Wall Wash

Floodlight, and CE 4" Tunable Recessed Light, among other substantially similar products (collectively, the "Accused Products"). These Accused Products are marketed, offered, and distributed throughout the United States, including in this District.

3.      By this action, Plaintiff seeks to obtain compensation for the harm Plaintiff has suffered, and will continue to suffer, as a result of Defendant's infringement of the Patents-in-Suit.

## NATURE OF THE ACTION

4.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

5.      Defendant has infringed and continues to infringe, and at least as early as the filing and/or service of this Complaint, has induced and continues to induce infringement of, and has contributed to and continues to contribute to infringement of, one or more claims of Plaintiff's Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in the United States, including in this District, and/or by importing the Accused Products into the United States.

6.      Plaintiff is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Plaintiff seeks monetary damages for Defendant's infringement of the Patents-in-Suit.

## THE PARTIES

7.      Plaintiff BX LED LLC is a Texas limited liability company with its principal place of business at 8140 Walnut Hill Ln., Ste. 500, Dallas, TX 75231. Plaintiff is the owner of the intellectual property rights at issue in this action.

8.      On information and belief, Defendant The Home Depot U.S.A., Inc. is a Delaware Corporation with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia,

30339-4024, and may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

9.    On information and belief, Defendant operates numerous regular and established places of business, referred to as "The Home Depot" retail stores, throughout the Western District of Texas, including, but not limited to, a "The Home Depot" retail store (Waco #6532) located at 5605 W Waco Dr, Waco, TX 76710. *See* https://www.homedepot.com/l/Waco/TX/Waco/76710/6532.

10.    On information and belief, Defendant produces or causes to be produced both the EcoSmart and Commercial Electric brand products under its private label business (*see, e.g.* https://www.energystar.gov/productfinder/product/certified-light-bulbs/details/2326316 and https://www.energystar.gov/productfinder/product/certified-light-fixtures/details/2268016) Both the EcoSmart and Commercial Electric brands are trademarked and held by the Home Depot Product Authority, LLC (https://uspto.report/TM/86372116 and https://uspto.report/TM/90066514). Through, at least, Defendant's sale of the Infringing Products, Defendant has committed, and continues to commit, ongoing acts of infringement throughout this District.

11.    On information and belief, Defendant, through its numerous retail stores, directly and/or indirectly distributes, markets, offers to sell, and/or sells the Accused Products in the United States and/or imports the Accused Products into the United States, including in the Western District of Texas, and otherwise directs infringing activities to this District in connection with the Accused Products.

## JURISDICTION AND VENUE

12.     As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

13.     This Court has personal jurisdiction over Defendant because Defendant has (i) availed itself of the rights and benefits of the laws of the State of Texas, (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of Texas (and in this District), (iii) derived substantial revenue from the sales and/or use of products, such as the Accused Products, in the State of Texas (and in this District), (iv) purposefully directed activities (directly and/or through intermediaries), such as marketing, shipping, distributing, offering for sale, selling, and/or advertising the Accused Products, at residents of the State of Texas (and residents in this District), (v) delivered Accused Products into the stream of commerce with the expectation that the Accused Products will be used and/or purchased by consumers in the State of Texas (and in this District), and (vi) committed acts of patent infringement in the State of Texas (and in this District).

14.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b), as Defendant operates numerous retail stores in this State and District that sell the Accused Products.

## BACKGROUND AND THE PATENTS-IN-SUIT

15.     Bridgelux, Inc., ("Bridgelux") is a Fremont, California-based manufacturing company that has, since 2002, designed solid-state lighting solutions that are high performance, energy efficient, cost effective, and easy to integrate. Bridgelux's patented light source technology produces clean, white light-emitting diodes ("LEDs") used as the core of commercial and

industrial lighting. Plaintiff is the owner by assignment of the Patents-in-Suit acquired from Bridgelux.

## U.S. Patent No. 6,869,812

16.     U.S. Patent No. 6,869,812 (the "'812 Patent") is titled "High power AllnGaN based multichip light emitting diode" and was issued on March 22, 2005. A true and correct copy of the '812 Patent is attached as Exhibit A.

17.     The '812 Patent was filed on May 13, 2003 as U.S. Patent Application No. 10/438,108.

18.     Plaintiff is the owner of all rights, title, and interest in and to the '812 Patent, with the full and exclusive right to bring suit to enforce the '812 Patent, including the right to recover for past infringement.

19.     The '812 Patent is valid and enforceable under United States Patent Laws.

20.     The '812 Patent recognized problems with existing light emitting diodes at the time of the invention of the '812 Patent.

21.     For instance, the inventors of the '812 Patent recognized that prior art light emitting diodes had issues of insufficient illumination and poor efficiency, limiting their ability "to function in some applications, such as providing general illumination, *e.g.*, ambient lighting." '812 Patent at 1:24-31. Prior attempts to address these issues involved the use of multiple LEDs and/or larger device sizes. *See id*. at 1:38-45, 2:16-18.

22.     The use of larger device sizes introduced other impediments towards efficiency, *e.g.*, lower light extraction efficiency relative to smaller devices. *See id*. at 2:61-65. Light extraction efficiency refers to the issue that when light is generated in an LED, some light fails to escape the device, because "as the device size increases, light has a tendency to bounce more and

thus travel a longer distance before exiting the device, resulting in increased light loss," whereas "light tends to bounce fewer times in a smaller device and thus travels a shorter distance." *See id*. at 3:12-16.

23.     The inventors of the '812 Patent recognized that it was "desirable to minimize the number of bounces and the total travel distance before light can escape for any light transmissive layer of an LED." *See id*. at 3:9-11.

24.     In view of the foregoing, among other advantages over the prior art, the inventions claimed by the '812 Patent provide the benefits of "superior light output efficiency" over the prior art by way of an active area with elongated geometry. *See id*. at 11:46-48. With elongated geometry, "light can easily escape from the long dimension side, thus substantially enhancing the brightness of the device. The elongated configuration of the LED chip also enhances heat dissipation, thus allowing the device to be operated at higher current levels to facility further enhancement of the light output thereof, as well as for improvement of the efficiency thereof." *See id*. at 8:62-9:3.

### U.S. Patent No. 7,901,109

25.     U.S. Patent No. 7,901,109 (the "'109 Patent") is titled "Heat sink apparatus for solid state lights" and was issued on March 8, 2011. A true and correct copy of the '109 Patent is attached as Exhibit B.

26.     The '109 Patent was filed on June 30, 2008 as U.S. Patent Application No. 12/165,563.

27.     Plaintiff is the owner of all rights, title, and interest in and to the '109 Patent, with the full and exclusive right to bring suit to enforce the '109 Patent, including the right to recover for past infringement.

28.     The '109 Patent is valid and enforceable under United States Patent Laws.

29.     The '109 Patent recognized problems with existing solid state lights at the time of invention.

30.     For instance, the '109 Patent recognized that the "operational power of many current solid state lights, such as light-emitting diode (LED) lights, is often limited by the solid state lights' ability to dissipate heat." '109 Patent at 1:11-13. "Accordingly, increasing the ability of a solid state light to dissipate heat allows for higher power, and thus brighter, more efficient solid state lights." *Id*. at 1:18-20.

31.     In view of the foregoing, the '109 Patent discloses, in one embodiment, "a heat sink apparatus for a solid state light" that "comprises a heat sink comprising a first end configured for connection to a solid state light, a second end opposite the first end, and a heat dissipating portion between the first end and the second end. The heat dissipating portion has an elongated portion and a plurality of fins for dissipating heat generated by the solid state light, the fins extending from the elongated portion." *Id*. at 1:27-34. Through this, and other disclosed embodiments, the '109 Patent offers advantages of, *inter alia*, increasing the heat dissipation, power, brightness, and efficiency of solid state lighting over the prior art.

**U.S. Patent No. 7,973,465**

32.     U.S. Patent No. 7,973,465 (the "'465 Patent") is titled "Light emitting diode with thin multilayer phosphor film" and was issued on July 5, 2011. A true and correct copy of the '465 Patent is attached as Exhibit C.

33.     The '465 Patent was filed on July 15, 2010 as U.S. Patent Application No. 12/836,852.

34.     Plaintiff is the owner of all rights, title, and interest in and to the '465 Patent, with

the full and exclusive right to bring suit to enforce the '465 Patent, including the right to recover for past infringement.

35.    The '465 Patent is valid and enforceable under United States Patent Laws.

36.    The inventors of the '465 Patent recognized problems with the application of phosphor material to LEDs and other solid state lighting devices at the time. Specifically, phosphor materials were used to convert blue or ultraviolet LEDs to white light; to that end, the prior art encapsulated blue and ultraviolet LEDs with phosphor "by introducing a suspension of phosphor particles into a carrier (e.g., silicone), encapsulating the LEDs in the carrier, and curing the carrier to provide a solid layer of material in which the phosphor particles will remain suspended." '465 Patent at 1:37-41.

37.    One problem present in the prior art was that "silicone is a poor thermal conductor, and when illuminated, phosphors generate heat. Thus, when a phosphor-coated LED with a cured silicone carrier is used in a high-power application, the cured silicone may crack and/or have a reduced lifetime. This property limits their use in high power LED applications which use temperature sensitive phosphor. Further, cracks in the phosphor and silicone composition reduce the efficiency of the device." *Id.* at 1:41-45.

38.    The inventions claimed by the '465 Patent addressed these limitations by, e.g., separating the phosphor bearing film from the cured silicone film, such that the cured silicone film was substantially free of phosphor. As a result, the '465 Patent offered advantages of, *inter alia*, simplifying the process for applying phosphor material to LEDs, as well as increasing the reliability and efficiency of phosphor material encapsulated LEDs.

### U.S. Patent No. 8,203,260

39.    U.S. Patent No. 8,203,260 (the "'260 Patent") is titled "Color temperature tunable

white light source" and was issued on June 19, 2012. A true and correct copy of the '260 Patent is attached as Exhibit D. The '260 Patent was filed on April 13, 2007 as U.S. Patent Application No. 11/787,107.

40.    Plaintiff is the owner of all rights, title, and interest in and to the '260 Patent, with the full and exclusive right to bring suit to enforce the '260 Patent, including the right to recover for past infringement.

41.    The '260 Patent is valid and enforceable under United States Patent Laws. The '260 Patent recognized problems with existing light emitting devices at the time of the invention of the '260 Patent.

42.    For instance, the '260 Patent describes apparatuses, absent in the prior art, which provide a tunable white light source. *See, e.g.*, '260 Patent at 2:15-17. The '260 Patent recognized that traditional white light sources emitted white light at a relatively fixed color temperature, such as "warm white light" having a color temperature of approximately 3000 Kelvin (K), in the case of incandescent lighting, and "cold white light" having a color temperature of approximately 7000K, in the case of fluorescent lighting. *See id.* at 1:20-24. At the time of the '260 Patent, white LED lighting was a relatively recent innovation and had similar limitations to traditional white light sources. *Id.* at 1:13:29.

43.    The '260 Patent recognizes that the prior art comprised systems and methods wherein LED white light was generated within a predetermined portion of the visible spectrum, for example, 400nm-700nm wavelength range, and using a significant number (e.g., "three hundred LEDs each of which has a narrow spectral width," in one example) of LEDs to achieve any tunability within that spectrum. *See id.* at 1:55-65. Considering the narrow visibility spectrum of white light produced by these sources, the unwieldy number of LEDs required to provide

tunability, and/or the need for cumbersome filters to obtain tunability, there was a need in the prior art for methods and devices that provided sources of white light that were tunable across the color temperature and visible spectrum with a minimal number of LED arrays. In addition, there was particular need to further increase the operating life and lower the power consumption of lighting devices, including LED lighting. *See*, *e.g.*, *id*. at 1:46-49; 2:61-64.

44. The inventions claimed by '260 Patent address these limitations by describing an apparatus with two LED arrangements wherein the first LED arrangement emits light of a first wavelength range, and the second emits light of a second wavelength range such the combination of the two appears white. *See*, *e.g.*, *id*. at 2:21-28. The first and second LED arrangements also contained respective means for controlling their relative outputs. *See*, *e.g.*, *id*. For example, in one described embodiment, the color temperature of the two LEDs could be tuned by controlling the relative magnitude of the drive currents of the LEDs using, for example, a potential divider arrangement. *See id*. at 2:50-52.

45. The inventors of the '260 Patent recognized a number of advantages of the claimed inventions over the prior art, including wide application in a variety of commercial and domestic lighting applications, without the necessity to manufacture different lights of various static, or highly limited, color temperatures and visibility spectrum output for different applications. *See*, *e.g.*, *id*. at 8:51-53. The invention is also particularly advantageous in applications where visibility may be impaired with changing environmental conditions such as fog, dust, or smoke, such that the LED lighting can be tuned to the level of optimal visibility. *See*, *e.g.*, *id*. at 3:49-53; 8:53-56. The invention further has the advantage of minimizing the number of LED arrangements necessary to achieve tunability across a broad color temperature spectrum, thus improving efficiency in power consumption and reducing manufacturing cost. *See*, *e.g.*, *id*. at 2:61-65.

**U.S. Patent No. 8,567,988**

46.    U.S. Patent No. 8,567,988 (the "'988 Patent") is titled "Efficient LED array" and was issued on October 29, 2013. A true and correct copy of the '988 Patent is attached as Exhibit E.

47.    The '988 Patent was filed on September 29, 2008 as U.S. Patent Application No. 12/240,011.

48.    Plaintiff is the owner of all rights, title, and interest in and to the '988 Patent, with the full and exclusive right to bring suit to enforce the '988 Patent, including the right to recover for past infringement.

49.    The '988 Patent is valid and enforceable under United States Patent Laws. The '988 Patent recognized problems with existing light emitting device arrays at the time of its invention.

50.    The inventors of the '988 Patent recognized that traditional prior art LED arrays were complicated to manufacture and resulted in inefficient heat dissipation, which in turn lowered light output by the LED array. In this regard, the '988 Patent recognized that "directly mounting the LED chips to a metal substrate without an insulting dielectric provided an efficient thermal path to reduce or minimize the degrading effects of heat on light output." *See*, *e.g.*, '988 Patent at 4:54-59. The '988 Patent also recognized that by spacing the LED chips apart from each other and making the surface of the metal substrate reflective, the regions between the chips operate to reflect light thereby increasing the optical output of the LED array. *See*, *e.g.*, *id*. at 6:10-17. Thus, the invention described and claimed in the '988 Patent provides the advantages of, *inter alia*, increased thermal efficiency and increased light output over the prior art.

**U.S. Patent No. 8,998,433**

51.    U.S. Patent No. 8,998,433 (the "'433 Patent") is titled "Light emitting device

utilizing remote wavelength conversion with improved color characteristics" and was issued on April 7, 2015. A true and correct copy of the '433 Patent is attached as Exhibit F.

52.    The '433 Patent was filed on October 13, 2011 as U.S. Patent Application Serial No. 13/273,208 and has an earliest priority date of March 8, 2006.

53.    Plaintiff is the owner of all rights, title, and interest in and to the '433 Patent, with the full and exclusive right to bring suit to enforce the '433 Patent, including the right to recover for past infringement.

54.    The '433 Patent is valid and enforceable under United States Patent Laws.

55.    The '433 Patent recognized and provided solutions to problems with existing light emitting devices of the time of the inventions claimed in the '433 Patent. '433 Patent at 1:19-22.

56.    For instance, the inventors of the '433 Patent recognized that certain commercial and entertainment lighting applications may need light to be emitted with high color saturation for optimal presentation. *Id*. at 1:26-30. To that end, typically high color saturation would be generated by applying a narrow selective filter to an incandescent white light source (a source which comprises a combination of light with different wavelengths in the visible spectrum). *Id*. at 1:30-35. The narrow selective filter would filter the white light to provide the desired saturated color light emission, however, this was an inefficient system that "wastes a significant portion of the light generated by the light source, as a significant portion is absorbed by the selective filter rather than being transmitted." *Id*. at 1:35-41.

57.    At the time of the claimed inventions, LED (light emitting diode) light sources that produced white light were a relatively recent innovation whose practical use was brought about by the development of LEDs emitting the blue/ultraviolet of the electromagnetic spectrum. *Id*. at 1:42-46. Such light generating LEDs would include photo-luminescent materials to absorb a portion of

the blue light emitted by the LED and re-emit light in a range of wavelengths (red, green, or yellow) which could combine to produce light appearing to be white or other colors in the visible spectrum. *Id*. at 1:46-60. While this method improved efficiency, it typically resulted in the disadvantage of lower color saturation by producing "a much broader emission curve than desired." *Id*. at 1:61-2:5. Along with this disadvantage, this method could require the use of layers of photo-luminescent materials that were undesirably thick. *Id*. at 3:40-46.

58.    The inventors of the '433 Patent realized that if the color enhancement layer is placed in the path between the photo-luminescent layer and the final emission path, the color enhancement/filter layer serves to greatly improve the color saturation quality of the final emission product. *Id*. Advantageously, in this configuration, "undesirable wavelengths of the emission product of the layer of photo-luminescent material may be filtered such that a final emission product established by the wavelength conversion component is highly saturated." *Id*. at 14:50-59. In this respect, the '433 Patent discloses a light emitting device that improves color saturation by, in one embodiment, utilizing remote wavelength conversion including "a color enhancement layer" that "functions as a filter that narrows the light emission spectrum of the final emission product from the lighting apparatus." *Id*. at 3:47-57.

59.    In view of the foregoing, the invention described and claimed in the '433 Patent provides, *inter alia*, improved color characteristics over the prior art including improved efficiency and improved color saturation. *See*, *e.g.*, *id*. at 14:50-59.

**U.S. Patent No. 9,913,333**

60.    U.S. Patent No. 9,913,333 (the "'333 Patent") is titled "Light sources utilizing segmented LEDs to compensate for manufacturing variations in the light output of individual segmented LEDs" and was issued on March 6, 2018. A true and correct copy of the '333 Patent is

attached as Exhibit G.

61.    The '333 Patent was filed on March 20, 2017 as U.S. Patent Application Serial No. 15/464,200 and has a priority date of February 26, 2009.

62.    Plaintiff is the owner of all rights, title, and interest in and to the '333 Patent, with the full and exclusive right to bring suit to enforce the '333 Patent, including the right to recover for past infringement.

63.    The '333 Patent is valid and enforceable under United States Patent Laws.

64.    The '333 Patent recognized and provided solutions to problems arising with LEDs' replacement of conventional light emitting devices such as incandescent and fluorescent lights. '333 Patent at 1:30-36.

65.    For instance, the '333 Patent recognized that the dissipation of heat due to the conversion efficiency of the LEDs places a limit on the power level at which an LED operates. The '333 Patent also recognized that, due to the increased current running through the LED, higher light output of the LEDs would lead to a decrease in conversion efficiency as well as an overall decrease in the lifetime of the LED. *Id.* at 1:45-65. A light source with a typical single LED does not produce sufficient light for most applications and, in general, "there is a limit to the light per unit area of LED that can be practically generated at an acceptable power conversion efficiency." *Id.* at 1:65-3:40. In this respect, LED light sources have been designed to use multiple LEDs wired in parallel to avoid numerous cost disadvantages and increased failure rates associated with connecting the LEDs in a series-type connection or by making larger LEDs. *Id.* at 1:66-3:12.

66.    The inventors of the '333 Patent addressed these limitations by utilizing "a single LED die that is divided into N segments that are serially connected to one another." *Id.* at 4:29-42. In this respect, the '333 Patent comprises, in one embodiment, "a plurality of segmented LEDs

connected in parallel to a power bus" where the segmented LEDs are serially connected in segments having equal area thus providing an improved, less expensive, and longer-lasting light emitting device. *Id.* at 4:29-45; 10:64-11:5; abstract.

67.    In view of the foregoing limitations of the prior art, the inventions claimed in the '333 Patent provide improved overall efficiency and life of the light source and "the ability to provide a light source that operates from a significantly higher potential than conventional LEDs while breaking up the light source into sufficient component light sources to compensate for the variability in light generation between the various component light sources." *See, e.g.*, *id.* at 5:60:6:11; 6:59-7:5; 7:43-49.

### U.S. Patent No. 10,966,300

68.    U.S. Patent No. 10,966,300 (the "'300 Patent") is titled "Light sources utilizing segmented LEDs to compensate for manufacturing variations in the light output of individual segmented LEDs" and was issued on March 30, 2021. A true and correct copy of the '300 Patent is attached as Exhibit H.

69.    The '300 Patent was filed on June 21, 2019 as U.S. Patent Application Serial No. 16/449,220 and has a priority date of February 26, 2009.

70.    Plaintiff is the owner of all rights, title, and interest in and to the '300 Patent, with the full and exclusive right to bring suit to enforce the '300 Patent, including the right to recover for past infringement.

71.    The '300 Patent is valid and enforceable under United States Patent Laws.

72.    The '300 Patent recognized and provided solutions to problems arising with LEDs' replacement of conventional light emitting devices such as incandescent and fluorescent lights. '300 Patent at 1:26-32.

73.    For instance, the '300 Patent recognized that the dissipation of heat due to the conversion efficiency of the LEDs places a limit on the power level at which an LED operates. The '300 Patent also recognized that, due to the increased current running through the LED, higher light output of the LEDs would lead to a decrease in conversion efficiency as well as an overall decrease in the lifetime of the LED. *Id.* at 1:41-61. A light source with a typical single LED does not produce sufficient light for most applications and, in general, "there is a limit to the light per unit area of LED that can be practically generated at an acceptable power conversion efficiency." *Id.* at 1:62-2:8. In this respect, LED light sources have been designed to use multiple LEDs wired in parallel to avoid numerous cost disadvantages and increased failure rates associated with connecting the LEDs in a series-type connection or by making larger LEDs. *Id.* at 2:9-3:31.

74.    The inventors of the '300 Patent addressed these limitations by utilizing "a single LED die that is divided into N segments that are serially connected to one another." *Id.* at 4:29-42. In this respect, the '300 Patent comprises, in one embodiment, a plurality of segmented LEDs connected in parallel between two power rails where the segmented LEDs are serially connected in segments having equal area thus providing an improved, less expensive, and longer-lasting light emitting device. *Id.* at 4:29-45; 10:64-11:5; abstract.

75.    In view of the foregoing limitations of the prior art, the inventions claimed in the '300 Patent provide improved overall efficiency and life of the light source and "the ability to provide a light source that operates from a significantly higher potential than conventional LEDs while breaking up the light source into sufficient component light sources to compensate for the variability in light generation between the various component light sources." *See, e.g.*, *id.* at 7:37-43.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,869,812

76.     Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

77.     Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '812 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, EcoSmart Led Light Strip, Commercial Electric ("CE") Recessed Lighting, EcoSmart Par38 Dimmable Flood LED Bulb with Selectable Color Temperature, Ecosmart A19 75W Bulb, Ecosmart White Glass Filament, CE Landscape Light, CE LED Floodlight with Wall Mount, CE Wall Wash Floodlight, CE 4'' Tunable Recessed Light, CE 4ft Wraparound LED Light, and CE LED Spike, among other substantially similar products (collectively, the "'812 Accused Products").

78.     By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '812 Patent by the '812 Accused Products. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '812 Accused Products that it obtains during discovery.

79.     *1(a): A light emitting diode chip comprising*:—The EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, EcoSmart White Glass Filament Bulb, and CE 4ft Wraparound LED Light each comprise a "light emitting diode chip," as recited in claim 1:

*EcoSmart A19 Daylight 100W Bulb*

  

Product Box                     LED Package                     LED Chip

*EcoSmart BR30 Smart Bulb*

  

Product Box                     LED Package                     LED Chip

*EcoSmart White Glass Filament Bulb*

  

Product Box                     LED Package                     LED Chip

*CE 4ft Wraparound LED Light*



LED Package                                    LED Chip

80.    ***1(b): a substantially transparent substrate***; — The EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, EcoSmart White Glass Filament Bulb, and CE 4ft Wraparound LED Light each comprise a "substantially transparent substrate," as seen in the below images where the transparent substrate is annotated in red:



*EcoSmart A19 Daylight 100W Bulb*

19



*EcoSmart BR30 Smart Bulb*



*EcoSmart White Glass Filament Bulb*



*CE 4ft Wraparound LED Light*

81.    ***1(c): An active region formed upon the substrate; and;*** —The EcoSmart A19

Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, EcoSmart White Glass Filament Bulb, and CE

4ft Wraparound LED Light each comprise an "active region formed upon the substrate," as seen

in the below images:



*EcoSmart A19 Daylight 100W Bulb*



*EcoSmart BR30 Smart Bulb*



*EcoSmart White Glass Filament Bulb*



*CE 4ft Wraparound LED Light*

82.     ***1(d): Wherein an aspect ratio of the active area is greater than approximately 1.5 to 1.***— The EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, EcoSmart White Glass Filament Bulb, and CE 4ft Wraparound LED Light each comprise an active area wherein the aspect ratio is greater than approximately 1.5 to 1.

*EcoSmart A19 Daylight 100W Bulb*



*EcoSmart BR30 Smart Bulb*



*EcoSmart White Glass Filament Bulb*



*CE 4ft Wraparound LED Light*



83.    The aspect ratios of the active areas of the light emitting diode chip in the EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, EcoSmart White Glass Filament Bulb, and CE 4ft Wraparound LED Light are all greater than 1.5 to 1. Specifically, the aspect ratios, as derived from the pixel (px) measurements taken from above images, are:

|  | L1 (long side) | L2 | Aspect Ratio (L1/L2) |
|---|---|---|---|
| EcoSmart A19 Daylight 100W Bulb | 1780.02 | 584.00 | 3.048 |
| EcoSmart BR30 Smart Bulb | 1276.10 | 488.07 | 2.614 |
| EcoSmart White Glass Filament Bulb | 1848.35 | 909.07 | 2.033 |
| CE 4ft Wraparound LED Light | 3633.38 | 1161.16 | 3.129 |

84.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '812 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '812 Patent under 35 U.S.C. § 271(c).

85.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '812 Patent while being on notice of (or willfully blind to) the '812 Patent. For instance, Defendant has supplied and continues to supply the '812 Accused Products to customers (e.g., end users and/or distributors of the '812 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '812 Patent.

86.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '812 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '812 Accused Products and uses of the '812 Accused Products. *See*, *e.g.*, https://www.homedepot.com/p/EcoSmart-60-Watt-Equivalent-A19-Dimmable-Energy-Star-LED-Light-Bulb-Daylight-4-Pack-B7A19A60WESD34/303574518; https://www.homedepot.com/p/Commercial-Electric-48-in-4-000-Lumens-Integrated-LED-White-Wraparound-WR4840K40LWL/306242227;    https://www.homedepot.com/p/EcoSmart-60-Watt-Equivalent-A19-Dimmable-Energy-Star-Frosted-Filament-LED-Light-Bulb-Daylight-4-Pack-A8A19A60WESD03/304350938.

87.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '812 Patent. For instance, Defendant knows (and/or has known) of the existence of the '812 Patent or at least should have known of the existence of the '812 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '812 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '812 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '812 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '812 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '812 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

88.     Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '812 Patent by offering for sale, selling, and/or importing one or more components in connection with the '812 Accused Products that contribute to the direct infringement of the '812 Patent by customers of the '812 Accused Products. As set forth above, Defendant has had actual knowledge of the '812 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '812 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '812 Patent. Defendant has supplied (and/or continues to supply) the '812 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '812 Patent by using the '812 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

89.     At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '812 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

90.     Additional allegations regarding Defendant's knowledge of the '812 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

91.     Defendant's infringement of the '812 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

92.     Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '812 Patent.

93.     Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '812 Patent, including, without limitation, a reasonable royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,901,109

94.     Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

95.     Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '109 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the EcoSmart Par38 Dimmable Flood LED Bulb with Selectable Color Temperature, CE LED Floodlight with Wall Mount, and CE Wall Wash Floodlight among other substantially similar products (collectively, the "'109 Accused Products").

96.     By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '109 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '109 Accused Products that it obtains during discovery.

97.     ***1(a): A heat sink apparatus for a solid state light, comprising***—The EcoSmart Par38 Dimmable Flood LED Bulb comprises a heat sink apparatus for a solid state light.

98.    ***1(b): a heat sink comprising***:—The EcoSmart Par38 Dimmable Flood LED Bulb

has a heat sink, as seen in the below annotated image:



99.    ***1(c): a second end opposite the first end; and—***The heat sink comprises a second

end opposite the first end, as seen in the below annotated image:



100.    ***1(d): a heat dissipating portion between the first end and the second end;***—The heat sink comprises a heat dissipating portion between the first end and the second end, as seen in the below annotated image:



101.    ***1(e): wherein the heat dissipating portion has an elongated portion and a plurality of fins for dissipating heat generated by the solid state light, the fins extending from the elongated portion***.—The heat dissipating portion of the heat sink has an elongated portion and a plurality of fins for dissipating heat generated by the solid state light, the fins extending from the elongated portion, as seen in the image below:



102.    Also by way of non-limiting example(s) set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 10 of the '109 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '109 Accused Products that it obtains during discovery.

103.    ***10(a): A solid state light*** assembly***, comprising:***—The CE LED Floodlight with Wall Mount and CE Wall Wash Floodlight are solid state light assemblies.



*CE LED Floodlight with Wall Mount*                    *CE Wall Wash Floodlight*

104.    ***10(b): a solid state light; and***—The CE LED Floodlight with Wall Mount and CE Wall Wash Floodlight comprise solid state lights.



CE LED Floodlight with Wall Mount



*CE Wall Wash Floodlight*

105.    ***10(c): a heat sink integrally affixed to the solid state light, the heat sink comprising at least one fin for dissipating heat generated by the solid state light.***

106.    The CE LED Floodlight with Wall Mount has a heat sink integrally affixed to the solid state light:



107. This heat sink comprises a plurality of fins for dissipating heat generated by the solid state light:



108. Likewise, the CE Wall Wash Floodlight has a heat sink integrally affixed to the solid state light:



109. This heat sink comprises a plurality of fins for dissipating heat generated by the solid state light:



110.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '109 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '109 Patent under 35 U.S.C. § 271(c).

111.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '109 Patent while being on notice of (or willfully blind to) the '109 Patent. For instance, Defendant has supplied and continues to supply the '109 Accused Products to customers (e.g., end users and/or distributors of the '109 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '109 Patent.

112.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '109 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '109 Accused Products and uses of the '109 Accused Products.[1]

113.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '109 Patent. For instance, Defendant knows (and/or has known) of the existence of the '109 Patent or at least should have known of the existence of the '109 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '109 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '109 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has

---

[1] *See, e.g.*, https://www.homedepot.com/p/EcoSmart-325-Watt-Equivalent-PAR38-Dimmable-Flood-LED-Light-Bulb-with-Selectable-Color-Temperature-27-30-35-40-50K-1-pack-G130P385/315868458; https://www.homedepot.com/p/Commercial-Electric-30-Watt-Bronze-Outdoor-Integrated-LED-Landscape-Weatherproof-Wall-Wash-Flood-Light-with-Adjustable-Mounting-Bracket-CEWW30BRZ/312051250; https://www.homedepot.com/p/Commercial-Electric-High-Output-200-Watt-Equivalent-LED-Flood-Light-with-Wall-Mount-Kit-3000-Lumens-Outdoor-Security-Lighting-FSN-28-4K-BZ/307505279.

intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '109 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '109 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '109 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

114.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '109 Patent by offering for sale, selling, and/or importing one or more components in connection with the '109 Accused Products that contribute to the direct infringement of the '109 Patent by customers of the '109 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '109 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '109 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '109 Patent. Defendant has supplied (and/or continues to supply) the '109 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '109 Patent by using the '109 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

115.    At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '109 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

116.    Additional allegations regarding Defendant's knowledge of the '109 Patent and

willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

117.    Defendant's infringement of the '109 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

118.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '109 Patent.

119.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '109 Patent, including, without limitation, a reasonable royalty.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,973,465

120.    Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

121.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '465 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, and Ecosmart A19 75W Bulb, among other substantially similar products (collectively, the "'465 Accused Products").

122.    As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '465 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '465 Accused Products that it obtains during discovery.

123.    *1(a): An apparatus comprising: A light emitting device;*—The EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, and Ecosmart A19 75W Bulb are apparatuses containing LEDs.





*EcoSmart A19 Daylight 100W Bulb*    *EcoSmart BR30 Smart Bulb*    *EcoSmart A19 75W Bulb*

124.    *1(b): a phosphor bearing film arranged with the light emitting device, the phosphor bearing film comprising phosphor and a silicone carrier; and*—The below images of an individual LED from the above '465 Accused Products are annotated to illustrate the phosphor bearing film comprising phosphor and a silicone carrier:



*EcoSmart A19 Daylight 100W Bulb*



*EcoSmart A19 Daylight 100W Bulb*



*EcoSmart BR30 Smart Bulb*



*EcoSmart BR30 Smart Bulb*



*EcoSmart A19 75W Bulb*



*EcoSmart A19 75W Bulb*

125.   ***1(c): a cured silicone film on the phosphor bearing film, the cured silicone film being substantially free of phosphor.***—The below images of an individual LED from the above '465 Accused Products are annotated to illustrate the cured silicone film on top of the phosphor film, the cured silicone film being substantially free of the phosphor.



*EcoSmart A19 Daylight 100W Bulb*



*EcoSmart BR30 Smart Bulb*



*Ecosmart A19 75W Bulb*

126.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '465 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '465 Patent under 35 U.S.C. § 271(c).

127.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '465 Patent while being on notice of (or willfully blind to) the '465 Patent. For instance, Defendant has supplied and continues to supply the '465 Accused Products to customers (e.g., end users and/or distributors of the '465 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '465 Patent.

128.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '465 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '465 Accused Products and uses of the '465 Accused Products. *See*, *e.g.*, https://www.homedepot.com/p/EcoSmart-75-Watt-Equivalent-A19-Dimmable-Energy-Star-LED-Light-Bulb-Bright-White-2-Pack-A7A19A75WESD08/303574549.

129.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '465 Patent. For instance, Defendant knows (and/or has known) of the existence of the '465 Patent or at least should have known of the existence of the '465 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '465 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '465 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '465 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '465 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '465 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

130.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '465 Patent by offering for sale, selling, and/or importing one or more components in connection with the '465 Accused Products that contribute to the direct infringement of the '465 Patent by customers of the '465 Accused Products. In particular, as set

forth above, Defendant has had actual knowledge of the '465 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '465 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '465 Patent. Defendant has supplied (and/or continues to supply) the '465 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '465 Patent by using the '465 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

131.   At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '465 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

132.   Additional allegations regarding Defendant's knowledge of the '465 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

133.   Defendant's infringement of the '465 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

134.   Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '465 Patent.

135.   Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '465 Patent, including, without limitation, a reasonable royalty.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,203,260

136.    Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

137.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '260 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the EcoSmart BR30 Smart Bulb, EcoSmart LED Light Strip, EcoSmart Indoor Smart Tunable Tape Light, and Commercial Electric Smart Tunable Recessed Trim, among other substantially similar products (collectively, the "'260 Accused Products").

138.    As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '260 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '260 Accused Products that it obtains during discovery.

139.    ***1(a): A color temperature tunable white light source, the source comprising:***— The Commercial Electric Smart Tunable Recessed Trim is a color temperature tunable white light sources, as seen below:

 

140.    ***1(b): an array of first LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 2500 K to 4000 K and;***—The white light sources of the Commercial Electric Smart Tunable Recessed Trim comprises an array of first LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 2500 K to 4000 K.



141.    ***1(c): second LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 6000 K to 10,000 K***—The white light sources of the Commercial Electric Smart Tunable Recessed Trim comprises second LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 6000 K to 10,000 K.

 

142.    *1(d): wherein the LED arrangements are configured such that a composite light is emitted by the array;—* The LED arrangements of the Commercial Electric Smart Tunable Recessed Trim are configured such that a composite light is emitted by the array. For example, as seen in the images for limitation 1(a) and 1(b), the LED arrangements are tunable and placed adjacent to each other so that the Warm White (first) LED arrangement and the Cool White (second) LED arrangement emit a composite light (e.g. a uniform white color temperature).

143.    *1(e): wherein the relative drive currents of the first and second LED arrangements are controllable, and thus variable in relative magnitude, such that the color correlated temperature of the composite light emitted by the array is electrically tunable*—As seen from the above juxtapositions of the LED arrangements and mobile application screenshots in limitations 1(b) and 1(c), the color correlated temperature of the composite light emitted by the array is electrically tunable and such tuning is accomplished by way of controlling the relative drive currents and thus relative magnitudes of the first and second LED arrangements.

144.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '260 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '260 Patent under 35 U.S.C. § 271(c).

145.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '260 Patent while being on notice of (or willfully blind to) the '260 Patent. For instance, Defendant has supplied and continues to supply the '260 Accused Products to customers (e.g., end users and/or distributors of the '260 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '260 Patent.

146.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '260 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '260 Accused Products and uses of the '260 Accused Products. *See, e.g.,* https://www.homedepot.com/p/Commercial-Electric-5-in-6-in-Smart-Hubspace-Color-Selectable-CCT-Integrated-LED-Recessed-Light-Trim-Works-with-Amazon-Alexa-and-Google-538561010/314254248.

147.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '260 Patent. For instance, Defendant knows (and/or has known) of the existence of the '260 Patent or at least should have known of the existence of the '260 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '260 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '260 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '260 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or

more claims of the '260 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '260 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

148.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '260 Patent by offering for sale, selling, and/or importing one or more components in connection with the '260 Accused Products that contribute to the direct infringement of the '260 Patent by customers of the '260 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '260 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '260 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '260 Patent. Defendant has supplied (and/or continues to supply) the '260 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '260 Patent by using the '260 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

149.    At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '260 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

150.    Additional allegations regarding Defendant's knowledge of the '260 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

151.    Defendant's infringement of the '260 Patent is exceptional and entitles Plaintiff to

attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

152.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '260 Patent.

153.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '260 Patent, including, without limitation, a reasonable royalty.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,567,988

154.    Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

155.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '988 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, CE LED Floodlight with Wall Mount, CE LED Landscape Flood Light, CE Wall Wash Floodlight, EcoSmart Par38 Dimmable Flood LED Bulb with Selectable Color Temperature, and CE 4'' Tunable Recessed Light among other substantially similar products (collectively, the "'988 Accused Products").

156.    As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claims 1 and 7 of the '988 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '988 Accused Products that it obtains during discovery.

157.    ***1(a): A light emitting diode (LED) apparatus comprising:***—The EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, CE LED Floodlight with Wall Mount, and CE LED Landscape Flood Light each comprises an LED apparatus:



*EcoSmart A19 Daylight 100W Bulb*



*EcoSmart BR30 Smart Bulb*



*CE LED Floodlight with Wall Mount*



*CE Landscape Light*

158.    ***1(b): a metal substrate having a reflective surface; and:***—The LED apparatuses of the EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, CE LED Floodlight with Wall Mount, and CE LED Landscape Flood Light each comprises a metal substrate having a reflective surface, as seen in the annotated images below:





*EcoSmart A19 Daylight 100W Bulb*

 

*EcoSmart BR30 Smart Bulb*

 

*CE LED Floodlight with Wall Mount*



*CE LED Landscape Flood Light*

159.    *1(c): a plurality of LED chips mounted directly to the reflective surface of the metal substrate creating an efficient thermal path and*;—The LED apparatuses of the EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, CE LED Floodlight with Wall Mount, and CE LED Landscape Flood Light each comprises a plurality of LED chips mounted directly to the reflective surface of the metal substrate creating an efficient thermal path, as seen in the annotated images below:





*EcoSmart A19 Daylight 100W Bulb*





*EcoSmart BR30 Smart Bulb*





*CE LED Floodlight with Wall Mount*





*CE LED Landscape Flood Light*

160.    ***1(d): at least a portion of the LED chips being spaced apart from each other to expose regions of the reflective surface between the portion of the LED chips, the exposed regions reflecting light emitted from the portion of the LED chips, and***—The LED chips in the EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, CE LED Floodlight with Wall Mount, and CE LED Landscape Flood Light are spaced apart from each other to expose regions of the reflective surface between the portion of the LED chips, the exposed regions reflecting light emitted from the portion of the LED chips, as seen in the images below.



*EcoSmart A19 Daylight 100W Bulb*



*EcoSmart BR30 Smart Bulb*



*CE LED Floodlight with Wall Mount*



*CE LED Landscape Flood Light*

161.    *1(e): an electrical path formed by connecting the LED chips in a chip to chip fashion*—An electrical path is formed by connecting the LED chips in a chip to chip fashion.



*EcoSmart A19 Daylight 100W Bulb*



*EcoSmart BR30 Smart Bulb*



*CE LED Floodlight with Wall Mount*



*CE LED Landscape Flood Light*

162.    ***Claim 7: The apparatus of claim 1 wherein the plurality of LED chips have a first surface that is mounted to the reflective surface, and electrical contacts that are provided on one or more surfaces that are not the first surface***.—The LED chips of the EcoSmart A19 Daylight 100W Bulb, EcoSmart BR30 Smart Bulb, CE LED Floodlight with Wall Mount, and CE LED Landscape Flood Light have electrical contacts which are provided on surfaces other than the one mounted to the reflective surface, as seen in the below images:



*EcoSmart A19 Daylight 100W Bulb*



*EcoSmart BR30 Smart Bulb*



*CE LED Floodlight with Wall Mount*



*CE LED Landscape Flood Light*

163.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '988 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '988 Patent under 35 U.S.C. § 271(c).

164.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '988 Patent while being on notice of (or willfully blind to) the '988 Patent. For instance, Defendant has supplied and continues to supply the '988 Accused Products to customers (e.g., end users and/or distributors of the '988 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '988 Patent.

165.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '988 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '988 Accused Products and uses of the '988 Accused Products. *See, e.g.*, https://www.homedepot.com/p/EcoSmart-65-Watt-Equivalent-BR30-Dimmable-CEC-Smart-Wireless-LED-Light-Bulb-Tunable-White-2-Pack-A9BR3065WESDZ02/309683614; https://www.homedepot.com/p/Commercial-Electric-High-Output-200-Watt-Equivalent-LED-

Flood-Light-with-Wall-Mount-Kit-3000-Lumens-Outdoor-Security-Lighting-FSN-28-4K-

BZ/307505279;        https://www.homedepot.com/p/Commercial-Electric-Line-Voltage-Bronze-

LED-Landscape-Flood-Light-with-Spike-SPKP-7W01/301233082.

166.    Defendant knows (and/or has known) that such encouraging and aiding does
(and/or would) result in their customers directly infringing the '988 Patent. For instance, Defendant
knows (and/or has known) of the existence of the '988 Patent or at least should have known of the
existence of the '988 Patent but was willfully blind to its existence. Indeed, Defendant has had
actual knowledge of the '988 Patent since at least as early as the filing and/or service of the
Complaint. And, as a result of their knowledge of the '988 Patent (and/or as a direct and probable
consequence of its willful blindness to this fact), Defendant specifically intends (and/or has
intended) that its encouraging and aiding does (and/or would) result in direct infringement of the
'988 Patent by Defendant's customers. On information and belief, Defendant specifically intends
(and/or has intended) that its actions will (and/or would) result in direct infringement of one or
more claims of the '988 Patent and/or subjectively believes (and/or has believed) that its actions
will (and/or would) result in infringement of the '988 Patent but has taken (and/or took) deliberate
actions to avoid learning of those facts.

167.    Additionally, Defendant has been and/or currently is contributorily infringing one
or more claims of the '988 Patent by offering for sale, selling, and/or importing one or more
components in connection with the '988 Accused Products that contribute to the direct
infringement of the '988 Patent by customers of the '988 Accused Products. In particular, as set
forth above, Defendant has had actual knowledge of the '988 Patent or are willfully blind to its
existence since at least as early as the filing and/or service of this Complaint. Further, Defendant
offers for sale, sells, and/or imports one or more components in connection with the '988 Accused

Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '988 Patent. Defendant has supplied (and/or continues to supply) the '988 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '988 Patent by using the '988 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

168.    At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '988 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

169.    Additional allegations regarding Defendant's knowledge of the '988 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

170.    Defendant's infringement of the '988 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

171.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '988 Patent.

172.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '988 Patent, including, without limitation, a reasonable royalty.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,998,433

173.    Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

174.    Defendant has infringed and is infringing, either literally or under the doctrine of

equivalents, the '433 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the EcoSmart Amber Filament LED Bulb, among other substantially similar products (collectively, the "'433 Accused Products").

175.    As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claims 1 of the '433 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '433 Accused Products that it obtains during discovery.

176.    ***1(a): A light emitting device configured to emit light of a selected color having a selected peak wavelength, comprising:***—The EcoSmart Amber Filament LED Bulb comprises a light emitting device configured to emit light of a selected color having a selected peak wavelength, i.e., an amber light having a selected peak wavelength, as seen in the below measurement of its emitted light's wavelength.



177.    *1(b): a radiation source operable to generate and radiate excitation energy, the source being configured to irradiate a wavelength conversion component with excitation energy*;—The EcoSmart Amber Filament LED Bulb comprises a radiation source (e.g. LEDs) operable to generate and radiate excitation energy (e.g. light), the source being configured to irradiate a wavelength conversion component (e.g. Phosphor) with a excitation energy. For example, the filament bulb, comprises LEDs to generate light and irradiate the phosphor covering said LEDs, as seen in the below image:



178.    *1(c): the wavelength conversion component comprising: a layer comprising a photo-luminescent material which, when irradiated by the radiation source, emits light of a first wavelength range having a single peak wavelength corresponding to the selected peak wavelength;*—The wavelength conversion component comprises a layer of photo luminescent material (e.g. Phosphor material), which emits a light of a first wavelength range having a single peak wavelength corresponding to the selected peak wavelength.  The selected peak wavelength is approximately 630nm. The following measurement corresponds to the measurement of the light emitted from the LED filament *without* the glass amber filter:



179.    ***1(d): a color enhancement filter layer to filter wavelengths of light outside of a second range, wherein the second wavelength range in narrower than the first wavelength range and centered on the selected peak wavelength***—The EcoSmart Amber Filament LED Bulb comprises a color enhancement filter layer (e.g., the amber glass) to filter wavelengths outside of a second range. The second wavelength range is narrower than the first wavelength range and centered on the selected peak wavelength.  The measurement of the first wavelength range of the LED bulb (without the amber glass) is presented above in limitation 1(c). The measurement of the second wavelength range of the LED bulb (*with* the amber glass) is below for comparison:



180.    As evident from the comparison of the two wavelength measurements, the color

enhancement filter (e.g. amber glass) layer filters wavelength outside the second range (e.g. filters wavelengths of 400nm-620nm and 650nm-740nm). The second wavelength measure range is narrower than the first wavelength range and is centered on the selected peak wavelength of approximately 630nm.

181.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '433 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '43 Patent under 35 U.S.C. § 271(c).

182.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '433 Patent while being on notice of (or willfully blind to) the '433 Patent. For instance, Defendant has supplied and continues to supply the '433 Accused Products to customers (e.g., end users and/or distributors of the '433 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '433 Patent.

183.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '433 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '433 Accused Products and uses of the '433 Accused Products. *See*, *e.g.*, https://www.homedepot.com/p/EcoSmart-40-Watt-Equivalent-B11-Dimmable-Fine-Bendy-Filament-LED-Vintage-Edison-Light-Bulb-Amber-2200K-3-Pack-B11A5E12822S/315775109; https://www.homedepot.com/p/EcoSmart-60-Watt-Equivalent-B11-Dimmable-Fine-Bendy-Filament-Candelabra-Base-LED-Vintage-Edison-Light-Bulb-Amber-3-Pack-B11A7E12822S/315774986.

184.    Defendant knows (and/or has known) that such encouraging and aiding does

(and/or would) result in their customers directly infringing the '433 Patent. For instance, Defendant knows (and/or has known) of the existence of the '433 Patent or at least should have known of the existence of the '433 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '433 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '433 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '433 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '433 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '433 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

185.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '433 Patent by offering for sale, selling, and/or importing one or more components in connection with the '433 Accused Products that contribute to the direct infringement of the '433 Patent by customers of the '433 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '433 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '433 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '433 Patent. Defendant has supplied (and/or continues to supply) the '433 Accused Products that comprise such component(s) to customers, who then

directly infringe one or more claims of the '433 Patent by using the '433 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

186.    At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '433 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

187.    Additional allegations regarding Defendant's knowledge of the '433 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

188.    Defendant's infringement of the '433 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

189.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '433 Patent.

190.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '433 Patent, including, without limitation, a reasonable royalty.

**COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 9,913,333**

191.    Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

192.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '333 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the EcoSmart A19 75W Bulb, among other substantially similar products (collectively, the "'333 Accused Products").

193.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claims 1 of the '333 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '333 Accused Products that it obtains during discovery.

194.     ***1(a): A light source comprising:***—The EcoSmart A19 75W Bulb comprises a light source.

195.     ***1(b): a plurality of segmented light emitting diodes (LEDs) connected in parallel,***—The EcoSmart A19 75W Bulb comprises a plurality of segmented LEDs connected in parallel, as seen in the annotated images below:







196.    ***1(c): wherein each segmented LED is an LED die divided into N segments that are each equal in area and form individual LEDs serially connected to one another, and wherein N is an integer that is greater than 1; and***—This limitation is met by the segmented LEDs as seen in the annotated images below:







197.    ***1(d): a controller that receives AC power and provides a power signal on said power bus.***—The EcoSmart A19 75W Bulb comprises a controller that receives AC power and provides a power signal on said power bus. For example, the rectifier ("MB10S" annotated in below image) receives AC power and provides a control signal based on said AC power. *See* https://www.diodes.com/assets/Datasheets/MB10S.pdf.



198.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '333 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '333 Patent under 35 U.S.C. § 271(c).

199.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '333 Patent while being on notice of (or willfully blind to) the '333 Patent. For instance, Defendant has supplied and continues to supply the '333 Accused Products to customers (e.g., end users and/or distributors of the '333 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '333 Patent.

200.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '333 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '333 Accused Products and uses of the '333 Accused Products. *See*, *e.g.*, https://www.homedepot.com/p/EcoSmart-75-Watt-Equivalent-A19-Dimmable-Energy-Star-LED-Light-Bulb-Bright-White-2-Pack-A7A19A75WESD08/303574549.

201.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '333 Patent. For instance, Defendant knows (and/or has known) of the existence of the '333 Patent or at least should have known of the existence of the '333 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '333 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '333 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '333 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '333 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '333 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

202.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '333 Patent by offering for sale, selling, and/or importing one or more components in connection with the '333 Accused Products that contribute to the direct infringement of the '333 Patent by customers of the '333 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '333 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '333 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '333 Patent. Defendant has supplied (and/or continues to

supply) the '333 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '333 Patent by using the '333 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

203.    At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '333 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

204.    Additional allegations regarding Defendant's knowledge of the '333 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

205.    Defendant's infringement of the '333 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

206.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '333 Patent.

207.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '333 Patent, including, without limitation, a reasonable royalty.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 10,966,300

208.    Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

209.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '300 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the EcoSmart A19

75W Bulb and EcoSmart A19 100W Bulb, among other substantially similar products (collectively, the "'300 Accused Products").

210.    As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claims 1 of the '300 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '300 Accused Products that it obtains during discovery.

211.    ***1(a): A light source comprising:***—The EcoSmart A19 75W Bulb comprises a light source.

212.    ***1(b): a substrate having first and second power rails; and***—The EcoSmart A19 75W Bulb comprises a substrate having first and second power rails, as seen in the annotated images below:



213.    ***1(c): a plurality of segmented LEDs connected between the first and second power rails***—The EcoSmart A19 75W Bulb comprises a plurality of segmented LEDs connected between the first and second power rails as seen in the annotated images below:





214.    ***1(d): wherein each segmented LED is configured to generate light when a power signal is applied to the first and second power rails***—In the EcoSmart A19 75W Bulb, each segmented LED is configured to generate light when a power signal is applied to the first and second power rails.

215.    ***1(e): wherein the plurality of segmented LEDs are provided by a single LED die that is divided into N segments serially connected to each other, with N being ≥1, and***—The plurality of segmented LEDs are provided by a single LED die that is divided into 6 segments serially connected to each other.








216.    ***1(f): wherein each segmented LED comprises a size that is 1/N times a size of a single junction LED fabricated in a same material as the segmented LED***.—Each segmented LED is 1/6 the size of a single junction LED fabricated in the same material as the segmented LED.

217.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '300 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '300 Patent under 35 U.S.C. § 271(c).

218.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '300 Patent while being on

notice of (or willfully blind to) the '300 Patent. For instance, Defendant has supplied and continues to supply the '300 Accused Products to customers (e.g., end users and/or distributors of the '300 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '300 Patent.

219.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '300 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '300 Accused Products and uses of the '300 Accused Products. *See*, *e.g.*, https://www.homedepot.com/p/EcoSmart-75-Watt-Equivalent-A19-Dimmable-Energy-Star-LED-Light-Bulb-Bright-White-2-Pack-A7A19A75WESD08/303574549.

220.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '300 Patent. For instance, Defendant knows (and/or has known) of the existence of the '300 Patent or at least should have known of the existence of the '300 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '300 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '300 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '300 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '300 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '300 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

221.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '300 Patent by offering for sale, selling, and/or importing one or more components in connection with the '300 Accused Products that contribute to the direct infringement of the '300 Patent by customers of the '300 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '300 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '300 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '300 Patent. Defendant has supplied (and/or continues to supply) the '300 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '300 Patent by using the '300 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

222.    At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '300 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

223.    Additional allegations regarding Defendant's knowledge of the '300 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

224.    Defendant's infringement of the '300 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

225.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '300 Patent.

226.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '300 Patent, including, without limitation, a reasonable royalty.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A.  That Judgment be entered that Defendant has infringed at least one or more claims of the Patents-in-Suit, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B.  An award of damages sufficient to compensate Plaintiff for Defendant's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendant's willful infringement;

C.  That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees;

D.  Costs and expenses in this action;

E.  An award of prejudgment and post-judgment interest; and

F.  Such other and further relief as the Court may deem just and proper.

Dated: May 2, 2022                          Respectfully submitted,

                                            **PLATT CHEEMA RICHMOND PLLC**

                                            */s/ Matthew C. Acosta*
                                            Matthew C. Acosta
                                            Texas Bar No. 24062577
                                            macosta@pcrfirm.com
                                            Andrew Lin
                                            Texas Bar. No. 24092702
                                            alin@pcrfirm.com
                                            Nicholas C. Kliewer
                                            Texas Bar No. 24083315
                                            nkliewer@pcrfirm.com
                                            **PLATT CHEEMA RICHMOND PLLC**
                                            1201 N. Riverfront Blvd., Suite 150
                                            Dallas, Texas 75207
                                            214.559.2700 Main
                                            214.559.4390 Fax

                                            **COUNSEL FOR PLAINTIFF**
                                            **BX LED, LLC**